SEYFARTH SHAW LLP
Geoffrey C. Westbrook (SBN 281961)
gwestbrook@seyfarth.com
Annette L. Rose (SBN 311274)
arose@seyfarth.com
Natalie C. Kreeger (SBN 328433)
nkreeger@seyfarth.com
400 Capitol Mall, Suite 2300
Sacramento, California 95814-4428
Telephone: (916) 448-0159
Facsimile: (916) 558-4839

Attorneys for Defendants,
IQVIA INC., IQVIA RDS INC., and
IQVIA HOLDINGS INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shehryar Iqbal, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IQVIA, INC., IQVIA RDS, INC., IQVIA HOLDINGS, INC.; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. '26CV1736 AJB BLM<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>(San Diego Case No. 26CU008575C) |

## TABLE OF CONTENTS

**Page**


I. BACKGROUND ..... 1
II. TIMELINESS OF REMOVAL ..... 2
III. CAFA REMOVAL ..... 3
1. Plaintiff and Defendants Are Minimally Diverse ..... 3
2. Plaintiff Is A Citizen Of California. ..... 4
3. Defendants Are Not Citizens of California. ..... 4
4. Doe Defendants' Citizenship Must Be Disregarded ..... 6
5. There Are More Than 100 Putative Class Members ..... 6
IV. THE AMOUNT IN CONTROVERSY EASILY EXCEEDS $5,000,000.00 ..... 6
1. Preponderance of the Evidence Standard. ..... 9
2. The Court Must Assume a 100% Violation Rate Based on Plaintiff's Classwide Theory of Misclassification ..... 10
a. Count I – Failure to Pay Compensation Due For Hours Worked in Violation of California Labor Code 510, 1192.12, 1194, 1194.2, 1197, Cal. Wage Order No. 4-2001. ..... 12
b. Count II and III - Meal And Rest Break Violations in Violation of California Labor Code Sections 226.7 and 512 and Cal. Wage Order No. 4-2001. ..... 14
c. Count IV – Failure to Pay All Regular Wages In Violation of California Labor Code Section 204 ..... 17
d. Count V – Pay Statements in Violation of California Labor Code Section 226(a) ..... 18
e. Waiting Time Penalties ..... 19
f. Attorneys' Fees. ..... 20
V. SUPPLEMENTAL JURISDICTION ..... 23
VI. VENUE ..... 23
VII. NOTICE TO STATE COURT AND TO PLAINTIFF ..... 23
VIII. ALL DEFENDANTS HAVE JOINED IN THIS REMOVAL ..... 23
IX. PRAYER FOR REMOVAL ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) .......... 9

*Armstrong v. Church of Scientology Int'l*, 243 F.3d 546 (9th Cir. 2000) .......... 4

*Arreola v. Finish Line*, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) .......... 11

*Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999 (C.D. Cal. 2009) .......... 14

*Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004 (N.D. Cal. 2002) .......... 20

*Brumbach v. Hyatt Corp.*, 2021 WL 926692 (S.D. Cal. Mar. 11, 2021) .......... 15

*Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147 (S.D. Cal. 2018) .......... 15

*Byrd v. Masonite Corp.*, 2016 WL 2593912 (C.D. Cal. May 5, 2016) .......... 19

*Cabrera v. S. Valley Almond Co., Ltd. Liab. Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881 (E.D. Cal. Dec. 16, 2021) .......... 17

*Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646 (9th Cir. 2012) .......... 21

*Carroll v. Ameri-Force Craft Servs.*, No. 24-cv-1443-RSH-DTF, 2025 LEXIS 343108 (S.D. Cal. Sep. 11, 2025) .......... 14

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) .......... 10, 15

*Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) .......... 13

*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018) .......... 20

*Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010) .......... 21

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .......... 1, 6, 8, 9

*Ehrman v. Cox Communs., Inc.*,
932 F.3d 1223 (9th Cir. 2019) .......... 3, 9

*Fristoe v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980) .......... 5

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) .......... 20

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) .......... 20

*Hertz Corp. v. Friend*,
130 S. Ct. 1191 (2010) .......... 10

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696, 702 (9th Cir. 2007) .......... 10

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d. 1193 (9th Cir. 2015) .......... 1

*Jauregui v. Roadrunner Transp. Servs.*,
28 F.4th 989 (9th Cir. 2022) .......... 19

*Jordan v. Nationstar Mortg. LLC*,
781 F.3d 1178 (9th Cir. 2015) .......... 1

*Kantor v. Wellesley Galleries, Inc.*,
704 F.2d 1088 (9th Cir. 1983) .......... 4

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) .......... 9

*LaCross v. Knight Transp. Inc.*,
775 F.3d 1200 (9th Cir. 2015) .......... 11

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) .......... 4

*Longmire v. HMS Host U.S., Inc.*,
Case No., 12-cv-2203, 2012 WL 5928485 (S.D. Cal. Nov. 26, 2012) .......... 20

*Muniz v. Pilot Travel Ctrs. LLC*,
NO. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) .......... 9, 10, 15, 20

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) .......... 3

*Nishimoto v. Federman-Bachrach & Assoc.*,
903 F.2d 709 (9th Cir. 1990) .......... 22

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) .......... 21

*In re Quintas Securities Litigation*,
148 F. Supp. 2d 967 (N.D. Cal. 2001) .......... 21

*Ramos v. Schenker, Inc.*,
2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) .......... 20

*Rapisura v. BMW of N. Am., LLC*,
No. 2:22-cv-00455 WBS AC, 2022 U.S. Dist. LEXIS 88600, 2022 WL 1557001 (E.D. Cal. May 17, 2022) .......... 14

*Rea v. Michaels Stores, Inc.*,
742 F.3d 1234 (9th Cir.2014) (per curiam) .......... 11

*Rippee v. Boston Market Corp.*,
408 F. Supp. 2d 982 (S.D. Cal. 2005) .......... 19

*Ritenour v. Carrington Mortg. Servs. LLC*,
228 F. Supp. 3d. 1025 (C.D. Cal. 2017) .......... 11

*Rodriguez v. AT&T Mobility Servs. LLC*,
728 F.3d 975 (9th Cir. 2013) .......... 8, 10

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996) .......... 8

*Sanders v. Exide Techs.*,
2019 WL 5258575 (C.D. Cal. Oct. 17, 2019) .......... 13

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*,
2017 WL 1520416 (C.D. Cal. Apr. 26, 2017) .......... 10

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013) .......... 8

*State Farm Mut. Auto Ins. Co. v. Dyer*,
19 F.3d 514 (10th Cir. 1994) .......... 4

*Tajonar v. Echosphere, LLC*,
2015 WL 4064642 (S.D. Cal. July 2, 2015) .......... 19

*Valdez v. Allstate Ins. Co.*,
372 F.3d 1115 (9th Cir. 2004) .......... 9

*Vitale v. Celadon Trucking Servs.*,
*No*. CV15-5193 PSG, 2015 WL 5824721 (C.D. Cal. Oct. 2, 2015) .......... 11

*Vongdara v. Tech Digital Corp.*,
2025 WL 2753950 (S.D. Cal. Sept. 29, 2025) .......... 15

*Wheatley v. MasterBrand Cabinets*,
2019 WL 688209 (C.D. Cal. Feb. 19, 2019) .......... 10, 20

*Wren v. RGIS Inventory Specialists*,
2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ............ 21

*Zavala v. Deutsche Bank Trust Co. Americas*,
2013 WL 3474760 (N.D. Cal. July 10, 2013) ............ 4

**State Cases**

*Caliber Bodyworks, Inc. v. Sup. Ct.*,
134 Cal. App. 4th 365 (2005) ............ 18

*Cortez v. Purolator Air Filtration Products Co.*,
23 Cal.4th 163 (2000) ............ 13

*Murphy v. Kenneth Cole Prods., Inc.*,
40 Cal. 4th 1094 (2007) ............ 14

**Federal Statutes**

28 U.S.C.
§ 84(a) ............ 22, 23
§ 1146(b)(2)(A) ............ 23
§ 1332 ............ 5
§ 1332(c)(1) ............ 4, 5
§ 1332(d) ............ 6, 8, 22
§ 1332(d)(2) ............ 3
§ 1332(d)(2)(A) ............ 3, 4
§ 1332(d)(5)(B) ............ 3, 6
§ 1332(d)(6) ............ 3, 7
§ 1367(a) ............ 22
§ 1391(a) ............ 22
§ 1441 ............ 1, 22
§ 1441(a) ............ 3, 5, 23
§ 1446 ............ 1, 3
§ 1446(a) ............ 6
§ 1446(b) ............ 3
§ 1446(d) ............ 23
§ 1453 ............ 1

Class Action Fairness Act of 2004, 28 U.S.C. §§ 1332(d)(2) ............ *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............ 2, 14

Cal. Bus. & Prof. Code § 17208 ............ 13, 14

Cal. Code Civ. Proc. § 340(a) ............ 17, 18

Cal. Code Civ. Proc. § 415.10 ............ 3

Cal. Lab. Code
§ 203 ........ 18, 19
§ 203(a) ........ 18
§ 204 ........ 16
§ 204(a) ........ 16
§ 210 ........ 16, 17
§ 210(a) ........ 16
§ 226 ........ 18
§ 226(a) ........ 17
§ 226(e) ........ 18
§ 226.7 ........ 14
§ 510 ........ 12
§ 512 ........ 14
§ 1192.12 ........ 12
§ 1194 ........ 12
§ 1194.2 ........ 12
§ 1194.2(a) ........ 12
§ 1197 ........ 12

**Rules**

Fed. R. Civ. P. 23 ........ 7

**Regulations**

Sen. Jud. Comm. Rep., S. REP. 109-14 ........ 7

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants IQVIA RDS Inc. (*erroneously sued as* IQVIA RDS, Inc.), IQVIA Inc. (*erroneously sued as* IQVIA, Inc.), and IQVIA Holdings Inc. (*erroneously sued as* IQVIA Holdings, Inc.) (collectively "Defendants") file this Notice of Removal, pursuant to U.S.C. §§ 1441, 1446, and 1453, asserting jurisdiction under the Class Action Fairness Act of 2004 ("CAFA"), 28 U.S.C. §§ 1332(d)(2), to effectuate the removal of the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California. Removal is proper for the reasons discussed below.

Congress intended CAFA jurisdiction to be interpreted expansively. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d. 1193, 1197 (9th Cir. 2015); *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (the "Supreme Court left no doubt" there is no antiremoval presumption for CAFA cases); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.")

## I. BACKGROUND

1. On February 13, 2026, Plaintiff Shehryar Iqbal filed an unverified class action complaint against Defendants in the Superior Court of California for the County of San Diego entitled, *Shehryar Iqbal, an individual and on behalf of all others similarly situated v. IQVIA, INC., IQVIA RDS, INC., IQVIA HOLDINGS, INC., and DOES 1-10, inclusive*, Case No. 26CU008575C (hereinafter "Complaint"). A true and correct copy of the Complaint is attached as **Exhibit 1**.

2. The Complaint alleges six causes of action against Defendants under California state law for various alleged wage and hour violations, including: (1) Failure to Pay Compensation Due for Hours Worked; (2) Meal Period Violations; (3) Rest Period

Violations; (4) Failure to Pay All Regular Wages; (5) Pay Statements; (6) Unfair Business Practices pursuant to California Business & Professions Code §§17200 *et seq*. Plaintiff generally alleges that Defendants "wrongfully misclassified exempt clinical research associates ("CRA") in California." See generally Compl. at ¶ 1.

3. On February 19, 2026, Plaintiff served Defendant IQVIA Holdings Inc.'s registered agent for service of process, via process server, a packet containing a copy of the Summons and Complaint, Civil Case Cover Sheet, ADR Information Package, and Notice of Case Assignment and Case Management Conference. A true and correct copy of the service packet served on Defendant IQVIA Holdings Inc. is attached as **Exhibit 2.**

4. On February 23, 2026, Plaintiff served Defendant IQVIA RDS Inc.'s registered agent for service of process, via process server, a packet containing a copy of the Summons and Complaint, Civil Case Cover Sheet, ADR Information Package, and Notice of Case Assignment and Case Management Conference. A true and correct copy of the service packet served on Defendant IQVIA RDS Inc. is attached as **Exhibit 3.**

5. On February 23, 2026, Plaintiff served Defendant IQVIA Inc.'s registered agent for service of process, via process server, a packet containing a copy of the Summons and Complaint, Civil Case Cover Sheet, ADR Information Package, and Notice of Case Assignment and Case Management Conference. A true and correct copy of the service packet served on Defendant IQVIA Inc. is attached as **Exhibit 4.**

6. Defendants have not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits 1 through 4** in this action, prior to filing this Notice of Removal.

## II. TIMELINESS OF REMOVAL

7. The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable."

28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

8. This Notice of Removal is timely because it is filed within thirty (30) days of the service of the Summons and Complaint on February 19, 2026 on Defendant IQVIA Holdings Inc. and service of the Summons and Complaint on February 23, 2026 on Defendants IQVIA RDS Inc. and IQVIA Inc. § 1446(b); Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery.").

## III. CAFA REMOVAL

9. This Court has original jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. § 1332(d)(2). As set forth in further detail below, this action is properly removable pursuant to 28 U.S.C. § 1441(a) because (1) the alleged amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, (2) the Complaint is a purported class action in which at least one class member is a citizen of a state different from that of Defendants (28 U.S.C. §§ 1332(d)(2) & (6)), and (3) the number of proposed class members is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

### 1. Plaintiff and Defendants Are Minimally Diverse.

10. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one class member must be a citizen of a state different from any named defendant. See 28 U.S.C. § 1332(d)(2)(A). Because no antiremoval presumption attends cases invoking CAFA, courts should be especially reluctant to *sua sponte* challenge a defendant's allegations of citizenship. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019). In this case, such minimal diversity exists: Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendants (which are citizens of North Carolina, New Jersey, and Delaware).

**2. Plaintiff Is A Citizen Of California.**

11. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.,* 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas,* 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)).

12. Plaintiff alleges he is "an adult resident of Madera, California, and worked throughout California, including San Diego, Orange, and Los Angeles, as a Senior CRA I." Compl. at ¶ 2. Plaintiff further alleges that he remains currently employed with Defendants. *Id*. at ¶ 2.

13. Plaintiff is domiciled in California. Further, Plaintiff alleges his intent is to remain domiciled in California by continuing his employment in California with Defendants. *Id*. Plaintiff's intent to remain domiciled in California is also evident from the fact that he brought this lawsuit in San Diego Superior Court. Therefore, Plaintiff has been at all relevant times a citizen and resident of the State of California.

**3. Defendants Are Not Citizens of California.**

14. Defendants are, and were at the time of the filing of this action, citizens of states other than California within the meaning of 28 U.S.C. § 1332(c)(1), 1332(d)(2)(A) (any member of a class of plaintiffs is a citizen of a State different from any defendant).

15. A corporation is a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which is where a corporation's officers direct, control and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 130 S. Ct. 1191, 1192–93 (2010).

16. In this case, Defendants are now, and have been ever since this action commenced, incorporated under the laws of North Carolina and Delaware. Defendant IQVIA RDS Inc. is incorporated in North Carolina, and Defendants IQVIA Inc. and IQVIA Holdings Inc. are incorporated in Delaware. Thus, for purposes of diversity jurisdiction, Defendants are citizens of North Carolina and Delaware.

17. Further, Defendant IQVIA RDS Inc. has its principal place of business in Durham, North Carolina, Defendant IQVIA Inc. has its principal place of business in Parsippany, New Jersey, and Defendant IQVIA Holdings Inc. has its principal place of business in Durham, North Carolina. Thus, for purposes of diversity jurisdiction, Defendant IQVIA Inc. is also a citizen of New Jersey.

18. Moreover, Defendants' corporate governance activity, including, but not limited to oversight, compliance, and corporate strategy, takes place in Parsippany, New Jersey, New York City, New York, or Durham, North Carolina. None of Defendants' executive officers or other high-level officers who direct, control, and coordinate Defendants' business activities, are located in California. Similarly, none of Defendants' senior management decisions are made in California. Defendants are not now, nor were they at the time this action commenced, citizens of California.

19. Thus, for purposes of diversity of citizenship, Defendants are, and have been at all times since this action commenced, citizens of North Carolina, Delaware, and New Jersey. 28 U.S.C. § 1332(c)(1). Plaintiff is a citizen of California. Compl. at ¶ 2. Accordingly, minimal diversity exists for purposes of CAFA.

**4. Doe Defendants' Citizenship Must Be Disregarded.**

20. Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) ("[U]nknown defendants sued as "Does" need not be joined in a removal petition."). Thus, the existence of Defendant Does 1 through 25, inclusive, does not deprive this Court of jurisdiction.

**5. There Are More Than 100 Putative Class Members.**

21. CAFA requires that the aggregate number of members of all proposed classes in the complaint be at least 100. See 28 U.S.C. § 1332(d)(5)(B).

22. The Complaint seeks to certify, and seeks relief on behalf of, "[a]ll persons who at any time after four (4) years prior to the filing of this action, or shorter statute of limitations as determined by the Court, through the date of trial, who were employed by Defendants in California as exempt [clinical research associates ("CRA")] and equivalent job titles, including but not limited to clinical research associate I, clinical research associate II, clinical research associate III, and senior clinical research associate. Compl. at ¶ 16. For the purposes of the calculations in this Notice of Removal, the alleged class period is from **February 13, 2022 to the present** ("Relevant Time Period").

23. During the Relevant Time Period, Defendants employed approximately 320 exempt CRAs in California. Accordingly, there are approximately 320 putative class members in Plaintiff's proposed class pursuant to 28 U.S.C. § 1332(d)(5)(B).

## IV. THE AMOUNT IN CONTROVERSY EASILY EXCEEDS $5,000,000.00

24. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among other factors mentioned, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's "notice of removal need include only a plausible allegation that the amount

in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89 (evidence not required to be filed with the notice). While Defendants deny any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000.00.

25. By filing this Removal, Defendants fully reserve all rights and defenses. Specifically, Defendants do not waive any defenses to the claims at issue in the Complaint. Defendants furthermore deny that class treatment is appropriate, deny Plaintiff has standing to represent the putative class, and deny Plaintiff will be able to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy and standing to represent any proposed class, class definitions, and allegations of damages in all respects.

26. However, for purposes of removal only, Defendants prepared the subsequent calculations, set forth *infra*, as part of their investigation of Plaintiff's classwide theory that Defendants misclassified Plaintiff and all similarly situated CRAs as exempt when they should have been classified as nonexempt during the Relevant Time Period "to avoid obligations imposed upon employers under California law for nonexempt employees." Compl. at ¶¶ 10, 16. In the Complaint, Plaintiff alleges that he and other putative class members should have been classified as non-exempt employees because they do not exert the requisite discretion and judgment in the performance of their job duties to be classified as exempt, but rather were required to follow written standard procedures and guidelines. *See id.* at ¶¶ 11-12. As a result of the alleged misclassification, Plaintiff contends that he and other putative class members were not paid overtime, were not properly compensated for all hours worked, did not receive meal or rest periods, and were not provided with accurate itemized wage statements. *See id*. at ¶ 21. As set forth below, and for purposes of removal only, while Defendants expressly deny any liability, **the amount in controversy exceeds $10,000,000.**

27. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of

$5,000,000. See 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S.Rep. 109-14, at 42–43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to **expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly,** with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.") (emphasis added).

28. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make a **plausible claim** that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 81. Although Defendants deny any liability, the amount in controversy that Plaintiff alleges easily exceeds $5,000,000.00.

29. **The Complaint does not allege the amount in controversy for the putative class that Plaintiff purports to represent.** Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. The proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013); see also *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.") The removing defendant must show that it is "more likely than not" that the jurisdictional

threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide the evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount.'")

**1. Preponderance of the Evidence Standard.**

30. To satisfy this standard, the "defendants' **notice of removal need include only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88 (emphasis added). A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1225 (9th Cir. 2019); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations of the jurisdictional elements**"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite… amount'") (emphasis added).

31. The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs.*

*LLC*, NO. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

32. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez,* 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

### 2. The Court Must Assume a 100% Violation Rate Based on Plaintiff's Classwide Theory of Misclassification.

33. The Court should assume a 100% violation rate based on Plaintiff's core classwide theory that Defendants misclassified each of the 320 putative class members. If a plaintiff asserts statutory violations, but provides no factual limitation on the scope, frequency, or distribution of those violations, courts apply a 100% violation rate for the amount in controversy calculations. As *Muniz* explains:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [his] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 & n.7 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were

subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to all putative class members reasonable"); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint.").

34. Ninth Circuit authority confirms that allegations of a uniform policy of misclassification justify the assumption of a 100 percent violation rate for the purposes of removal. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (Defendant was permitted to assume that each class member was misclassified as an independent contractor, rather than an employee for purposes of calculating amount in controversy under CAFA); *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1239 (9th Cir.2014) (per curiam) (upholding the underlying assumption that when all members of the putative class are alleged to have been misclassified, the consequences of misclassification apply to all of them); *Vitale v. Celadon Trucking Servs., No.* CV15-5193 PSG (GJSX), 2015 WL 5824721, at *3 (C.D. Cal. Oct. 2, 2015) ("Defendant is correct that it may reasonably assume that 100% of the putative class members are theoretically entitled to penalties for misclassification."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate—

especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations.").

35. The entire theory of Plaintiff's case is that Defendants "intentionally" misclassified Plaintiff and other putative class members as exempt "in order to avoid obligations imposed upon employers under California law for nonexempt employees," such as overtime pay, meal breaks, rest breaks, and wage statements. Compl. at ¶ 10. Because misclassification is a binary determination—either a CRA is misclassified or not—Defendants may reasonably assume that each and every putative class member was purportedly misclassified, resulting in a 100% violation rate. Further, Plaintiff affirmatively alleges that the violations he supposedly suffered are "typical" of the putative class of all exempt CRAs in California. *Id.* at ¶ 23. As such, by his own admission, a 100% violation rate is valid for purposes of calculating the amount in controversy.

36. As set forth below, the alleged amount in controversy exceeds $5,000,000. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for the purposes of this Notice of Removal that liability is established.

**a. Count I – Failure to Pay Compensation Due For Hours Worked in Violation of California Labor Code 510, 1192.12, 1194, 1194.2, 1197, Cal. Wage Order No. 4-2001.**

37. Plaintiff's first cause of action seeks class-wide recovery for Defendants' alleged failure to pay "minimum wages for all hours worked, for off-the-clock hours, for overtime wages and for other compensation due them under California law …" . Compl. at ¶ 27. Plaintiff alleges that because Defendants' "improperly treated as exempt employees when they should have been treated as non-exempt employees, regular hourly rates were not properly calculated, they were not paid for all hours worked (including time when they should have been provided meal and rest breaks) and they were not paid overtime." *Id*. at ¶ 28. Plaintiff also seeks to recover liquidated damages. *Id.* at ¶ Relief §, (f).

38. California Labor Code § 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon[.]" California law also allows Plaintiff and putative class members to recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a).

39. Plaintiff states that this claim is brought "on behalf of a class of all similarly situated employees in the State of California who were employed and worked at least four years prior to the date of the complaint." *See* Compl. ¶ at 29. Thus, for determining the amount in controversy, the four-year statute of limitations applies. Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178 (2000).

40. Here, Defendants employed approximately 320 full-time exempt CRA employees during the Relevant Time Period (February 13, 2022 to the present). To date, there are a maximum of 213 workweeks at the time of this filing for each alleged putative class member. There are approximately 35,945 workweeks for the putative class during the Relevant Time Period. Compl. at ¶¶ 1, 16. Further, the average base salary for the putative class members is $115,217.94, with the lowest salary for a CRA 1 at approximately $75,000.00 and the highest salary at approximately $161,000.00 for a Senior CRA 3 during the Relevant Time Period. If Defendants proceed *arguendo*, for purposes of removal only, that each putative class member, on average, earned an annual base salary of $115,217.94 and worked 40 hours per week, then their hourly base rate would be $55.39.

41. Based on Defendants' internal investigation of Plaintiff's allegations set forth in the Complaint, Defendants have conservatively calculated the amount in controversy pertaining to Plaintiff's class claim for unpaid overtime concerning its exempt CRA employees as approximately **$2,986,561.80.** This figure is calculated by

taking the approximately 35,945 weeks worked by the 320 exempt CRAs in the class and estimating 1 hour of unpaid work at $83.09 each week ([$55.39 x 1.5 = $83.09]). For the purpose of identifying the amount in controversy under CAFA, assuming one hour of unpaid overtime per week is conservative based on Plaintiff's classwide theory of misclassification. *See, e.g., Cavada v. Inter-Cont'l Hotels Grp., Inc.,* 2019 WL 5677846, at *5 (S.D. Cal. Nov. 1, 2019) ("two hours of unpaid overtime per week is reasonable" based on allegations of a "uniform pattern of unlawful wage and hour practices", "a uniform policy and practice that failed to accurately record overtime worked" and a "systemic scheme"); *Sanders v. Exide Techs.*, 2019 WL 5258575, at *5 (C.D. Cal. Oct. 17, 2019) (accepting as reasonable defendant's estimate of three unpaid overtime hours per work week); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) ("Defendant's assumptions that each class member worked 2.5 hours of overtime per week" is "conservative").

42. Plaintiff also seeks an award for "liquidated damages" relating to the alleged class claims. Compl. at ¶ Relief §, (f). Adding liquidated damages in the same amount could total at least **$5,973,123.60**. *See e.g. Carroll v. Ameri-Force Craft Servs.*, No. 24-cv-1443-RSH-DTF, 2025 LEXIS 343108, at *15 (S.D. Cal. Sep. 11, 2025) ("inclusion of liquidated damages, in an amount equal to the unpaid minimum wages, is a reasonable assumption."); *Rapisura v. BMW of N. Am., LLC,* No. 2:22-cv-00455 WBS AC, 2022 U.S. Dist. LEXIS 88600, 2022 WL 1557001, at *3 (E.D. Cal. May 17, 2022) (allowing recovery of liquidated damages in an amount equal to unpaid minimum wages).

**b. Count II and III - Meal And Rest Break Violations in Violation of California Labor Code Sections 226.7 and 512 and Cal. Wage Order No. 4-2001.**

43. Plaintiff's second and third causes of actions are for the alleged failure to provide meal periods and failure to authorize and permit rest periods in violation of Labor Code §§ 512 and 226.7. With respect to both his meal and rest period claims, Plaintiff alleges that because he and other putative class members improperly classified as exempt

employees, they were not provided legally compliant meal and rest breaks, nor were they paid premiums when the breaks were not properly provided. Compl. at ¶ ¶ 31, 34.

44. The statute of limitations for meal and rest period premium pay under Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").

45. However, Plaintiff's Complaint makes clear that he has brought such claims for unpaid meal and rest period premiums "on behalf of a class of all similarly situated employees in the State of California who were employed and worked at least four years prior to the date of the complaint." Compl. at ¶ ¶ 32, 35. Thus, for determining the amount in controversy, the four-year statute of limitations applies. Cal. Bus. & Prof. Code § 17208.

46. Plaintiff does not allege a violation rate. In addition, Plaintiff's meal and rest break claims rest entirely on his overarching classwide theory that Defendants improperly misclassified him and all the other putative class members as exempt employees to avoid providing the "wage and hourly protections and benefits to which nonexempt employees are entitled to under California law," such as "legally compliant meal breaks [and] rest breaks." Compl. at ¶ 10. Because Plaintiff alleges a uniform misclassification policy and offers no limitation on the frequency of break violations, his allegations justify a 100% violation rate for purposes of calculating the amount in controversy. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%")).

47. While Defendants are entitled to assume a 100 percent violation rate (i.e., five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, **Defendants will conservatively assume one missed meal period and one missed rest period each week for purposes of removal.**

48. Courts in the Southern District have consistently upheld even higher assumptions of meal and rest period violations as plausible for purposes of determining the amount in controversy. *Vongdara v. Tech Digital Corp.*, 2025 WL 2753950, at *6 (S.D. Cal. Sept. 29, 2025) (two penalties per week reasonable based on plaintiff's allegation that defendants employed "policies, practices, and/or procedures" that resulted in meal and rest break violations"); *Brumbach v. Hyatt Corp.*, 2021 WL 926692, at *9 (S.D. Cal. Mar. 11, 2021) (assumption of two penalties per week reasonable based on employer's alleged "policy" of failing to provide meal periods and rest breaks); *Bryant v. NCR Corp*., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore finds Defendant's assumed violation rates reasonable").

49. The proposed putative class worked a total of approximately 35,945 workweeks and during the Relevant Time Period between February 13, 2022 and the present with an average hourly rate of $55.39 per hour. As such, assuming one missed meal period and one missed rest period each week, Defendants have calculated a conservative amount in controversy with respect to Plaintiff's class claim for missed rest and meal periods as approximately **$3,981,987.10.**

50. This figure was calculated by taking the approximately 35,945 workweeks worked by the 320 exempt employees in the class and estimating 1 meal period violation and 1 rest period violation per proposed class member per workweek, which each triggered an alleged $55.39 premium for each class member based on the average hourly rate for Defendants' exempt CRA employees in California between February 13, 2022 to the present. [($55.39 hour x 35,945 workweeks x 1 meal period premium) + ($55.39/hour x 35,945 workweeks x 1 rest period premium).]

**c. Count IV – Failure to Pay All Regular Wages in Violation of California Labor Code Section 204.**

51. Plaintiff alleges that he and the putative class members were not paid "the proper wages for all hours worked" in violation of Labor Code § 204. Compl. at ¶ 36.

52. Labor Code § 204 provides that all wages, with limited exceptions, are "due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code § 204(a). Labor Code § 210 provides that "every person who fails to pay the wages of each employee as provided in Section []…204…shall be subject to a penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." Cal. Lab. Code § 210(a).

53. Plaintiff's claim for failure to pay all wages is rooted in his overarching classwide theory that Defendants misclassified him and other putative class members as exempt employee, resulting in the failure to pay all wages due, including minimum wages, overtime wages, and meal and rest period penalties.

54. Given Plaintiff's classwide misclassification theory, it is reasonable to calculate penalties under Labor Code § 210 based on the assumption that unpaid wages occurred in every pay period. *See Cabrera v. S. Valley Almond Co., Ltd. Liab. Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *31-32 (E.D. Cal. Dec. 16, 2021) (because the court found that it was "reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member…[i]t follow[ed] that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort").

55. As a penalty, the statute of limitations for penalties under Labor Code § 210 is one year. Cal. Code Civ. Proc. § 340(a). During the limitations period of February 13,

2025 to the present, there are approximately 218 putative class members who worked approximately 10,051 workweeks who were issued approximately 4,798 wage statements issued during this period. Defendants paid putative class members on a semi-monthly basis.

56. When including a $100 penalty for the initial wage statement and $200 for each subsequent wage statement, and assuming a 100% violation rate, the amount in controversy on this claim would equal no less than **$937,800.00.** ([$100 × 218 initial wage statements] + [$200 × (4,798 total wage statements – 218 initial wage statements)]). This calculation does not take into account the 25% of allegedly withheld wages that Plaintiff and putative class members may claim, which will further increase the amount in controversy.

**d. Count V - Pay Statements in Violation of California Labor Code Section 226(a).**

57. Plaintiff's fifth cause of action alleges Defendants did not provide wage statements that comply with California law. Plaintiff alleges that because he and other class members were misclassified as exempt, their wage statements "did not contain, among other things, properly calculated regular hourly rates, overtime rates, hours worked, meal break premiums, and rest break premiums." Compl. at ¶ 39.

58. Labor Code § 226 claims are subject to a one-year limitation period, which in this case is February 13, 2025 to the present. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Code § 340(a). Defendants calculate the amount in controversy based on the per-pay-period penalty amount set forth in Labor Code § 226(e). The putative class of employees that is entitled to penalties under Section 226 includes 218 exempt CRA employees in California from February 13, 2025 to the present who worked a total of approximately 10,051 workweeks.

59. Because Defendants pay their employees semi-monthly, they issued approximately 4,798 wage statements from February 13, 2025 to the present. When applying the minimum penalty of $50 per pay period for the initial violation and $100 for each subsequent wage statement violation, assuming a 100% violation rate, the amount in

controversy on this claim would yield a liability of at least **$468,900.00** (([$50 ×218 initial wage statements] + [$100 × (4,798 total wage statements − 218 initial wage statements)]). This calculation is reasonably conservative because each and every wage statement would be inaccurate based on Plaintiff's overarching misclassification theory.

**e. Waiting Time Penalties.**

60. Under Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay rate if the employer fails to timely pay all final wages due. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

61. Although Plaintiff admits that he is currently employed by Defendants in his Complaint – and therefore would not be entitled to any waiting time penalties under California law – Plaintiff nevertheless seeks "waiting time penalties" as a form of relief in his Complaint. *See* Compl. at ¶ Relief §, (e). Because Plaintiff seeks to represent a putative class of "**[a]ll persons** … who were employed by Defendants in California as exempt CRAs and equivalent job titles, including but not limited to clinical research associate I, clinical research II, clinical research associate III, and senior clinical research associate," he presumably seeks waiting time penalties on behalf of all putative class members whose employment has ended. *Id.* at ¶ 16.

62. The penalties recoverable under Labor Code § 203 are subject to a three year statute of limitations. Approximately 74 exempt CRAs separated their employment with Defendants from February 13, 2023 to the present. Estimating waiting time penalties up to the maximum penalty set forth in Labor Code § 203—wages for each day up to a thirty day maximum—damages on this claim would come to at least **$983,726.40.** (74 former CRA exempt employees x 30 days x 8 hours x $55.39).

63. It is appropriate to use the maximum 30 days to calculate the amount in controversy for the waiting time penalties. *See, e.g.*, *Tajonar v. Echosphere, LLC*, 2015

WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding defendant's "calculations [we]re reasonable and consistent with [plaintiff's] own allegations" that each employee was entitled to the maximum thirty-day penalty); *Rippee v. Boston Market Corp*., 408 F. Supp. 2d 982, 985-96 (S.D. Cal. 2005) ("The potential amount of 'waiting time penalties' at stake can be calculated by multiplying the number of former employees in the proposed class by thirty days' wages; thirty days' wages can be calculated by multiplying the average number of hours worked by the average rate of pay."); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations."); *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 994 (9th Cir. 2022) ("not unreasonable for [Defendant] to assume that the vast majority (if not all) of the alleged violations [] at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.").

**f. Attorneys' Fees.**

64. In addition to the damages and penalties discussed above, the Complaint also seeks an award of attorneys' fees. Compl. Prayer for Relief, (h). Requests for attorneys' fees may be taken into account in ascertaining the amount in controversy for purposes of removal. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Longmire v. HMS Host U.S., Inc.*, Case No., 12-cv-2203, 2012 WL 5928485, at * 9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

65. The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

66. In the class action context, Courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation, and Courts may depart from this benchmark when warranted. *See Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *7–8 (C.D. Cal. Feb. 19, 2019) (finding an estimate of attorneys' fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]he 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and finding plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment is appropriate and reasonable); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount reasonable); *see also In re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting in the class action settlement context the benchmark for setting attorneys' fees is 25% of the common fund).

67. Thus, even under the conservative benchmark of 25% of the total recovery, attorneys' fees based on the amount in controversy established above could be several multiples of the jurisdictional amount. Based on the conservative amount in controversy calculations above, alleged attorneys' fees in controversy amount to **$2,339,743.83.**

68. Since at least one member of the proposed class and Defendants are citizens of different states, there are more than 100 proposed class members, and the amount in controversy exceeds $5,000,000, removal based on CAFA jurisdiction is proper. A conservative estimate of the amount in controversy—not accounting for one of Plaintiff's causes of action – is **$11,698,719.13.** Defendants have briefly summarized the potential amount in controversy in the below chart.

| **Count / Form of Damages Requested** | **Amount In Controversy** |
|---|---|
| Unpaid Minimum/Overtime Wages (Count I) | $2,986,561.80 (excluding liquidated damages) |
| Meal and Rest Period Violations (Count II and III) | $3,981,987.10. |
| Failure to Pay All Regular Wages (Count IV) | $937,800.00 |
| Pay Statements (Count V) | $468,900.00 |
| Waiting Time Penalties (*See* Prayer for Relief, (e) ) | $983,726.40 |
| **Sub-Total** | $9,358,975.30 |
| Attorneys' Fees (25%) (based on the above calculated claims only) | $2,339,743.83 |
| **Total (on the above calculated claims only)** | $11,698,719.13 |

69. To the extent Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

**V. SUPPLEMENTAL JURISDICTION**

70. To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction, the Court may exercise supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a). Supplemental jurisdiction is proper because any such claims arise from the same common nucleus of operative facts as the claims establishing federal jurisdiction, and therefore form part of the "same case and controversy." *See Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990) ("[A] district court may exercise pendent jurisdiction over state law claims arising from a [common] nucleus of operative fact.").

**VI. VENUE**

71. Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a). This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California. 28 U.S.C. § 84(a). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**VII. NOTICE TO STATE COURT AND TO PLAINTIFF**

72. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego Superior Court of the State of California as required under 28 U.S.C. § 1446(d). The Notice of Removal is concurrently being served on all parties.

**VIII. ALL DEFENDANTS HAVE JOINED IN THIS REMOVAL**

73. All Defendants have joined in this removal as required under 28 U.S.C. § 1146(b)(2)(A).

## IX. PRAYER FOR REMOVAL

74. WHEREFORE, Defendants pray that this civil action be removed from Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

DATED: March 19, 2026

SEYFARTH SHAW LLP

By: */s/ Annette L. Rose*
Geoffrey C. Westbrook
Annette L. Rose
Natalie C. Kreeger

Attorneys for Defendants,
IQVIA INC., IQVIA RDS INC., and
IQVIA HOLDINGS INC.