LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
Matthew R. Snyder (SBN 350907)
msnyder@toddflaw.com
23586 Calabasas Rd., Suite 105
Calabasas, CA  91302
Telephone:  (323) 306-4234
Facsimile:  (866) 633-0228

THE BLANCHARD LAW GROUP, APC
Lonnie C. Blanchard III (SBN 93530)
lonnieblanchard@gmail.com
177 East Colorado Blvd., Suite 200
Pasadena, California 91105
Telephone: (213) 599-8255

HOLMES LAW GROUP, APC
Jeff Holmes (SBN 100891)
jeffholmesjh@gmail.com
2801 Ocean Park Blvd., #1035
Santa Monica, California 90405
Telephone: (310) 396-9045

Attorneys for Plaintiff
SHEHRYAR IQBAL

SEYFARTH SHAW LLP
Geoffrey C. Westbrook (SBN 281961)
gwestbrook@seyfarth.com
Annette L. Rose (SBN 311274)
arose@seyfarth.com
Natalie C. Kreeger (SBN 328433)
nkreeger@seyfarth.com
400 Capitol Mall, Suite 2300
Sacramento, California 95814-4428
Telephone:  (916) 448-0159
Facsimile: (916) 558-4839

Attorneys for Defendants,
IQVIA INC., IQVIA RDS INC., and
IQVIA HOLDINGS INC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shehryar Iqbal, an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>IQVIA, INC., IQVIA RDS, INC., IQVIA HOLDINGS, INC.; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 3:26-cv-01736-AJB-JAC<br><br>**JOINT DISCOVERY PLAN**<br><br><br><br>Complaint Filed: February 13, 2026<br>Action Removed: March 19, 2026 |

Plaintiff SHEHRYAR IQBAL ("Plaintiff") and Defendants, IQVIA INC., IQVIA RDS INC., and IQVIA HOLDINGS INC. ("Defendants") (collectively the "Parties"), submit the following discovery plan pursuant to Fed. R. Civ. P. 26(f)(3) and ECF No. 8:

1

326717740v.1

## I.   JURISDICTION AND SERVICE

### Plaintiff's Position

Based upon Defendants' removal from State to Federal Court, the Court currently has personal and subject matter jurisdiction over this action, and venue is proper.

### Defendants' Position

The Court has personal and subject matter jurisdiction over this action, and venue is proper.

## II.   AMENDMENT OF PLEADINGS

### Plaintiff's Position

Plaintiff has filed a PAGA letter with the LWDA and has drafted an amended complaint to add 203 class claims and PAGA claims to the operative complaint. Plaintiff has also drafted an amended PAGA Letter alleging 203 claims.  Plaintiff has requested that Defendant voluntarily consent to this amendment without the need to file a motion. Defendant has recently agreed to allow this amendment by stipulation.  This stipulation has not yet been completed by the parties and filed with the Court, but will be completed soon.

### Defendants' Position

Defendants assert that the operative Class Action Complaint is defective and fails to state a claim.

## III.   PROTECTIVE ORDER

### Plaintiff's Position

Plaintiff will cooperate in forming and entering a reasonable protective order.

### Defendants' Position

Given the confidential and sensitive materials at issue—including documents that may contain PHI, implicate HIPAA-related concerns, or include highly sensitive business information such as clinical protocols or standard operating procedures ("SOPs")—Defendants anticipate that a protective order will be necessary and that meaningful meet-and-confer efforts with Plaintiff's counsel will be required.

326717740v.1

Defendants also have concern that Plaintiff's pleading and allegations in the lawsuit are substantively identical to a complaint that Plaintiff's counsel filed in another lawsuit against Defendants' direct competitor, ICON Clinical Research LLC. *See Nedved, et al. v. ICON Clinical Research LLC, et al.*, S.D. Cal. Case No. 3:25-cv-03541. Plaintiff's counsel's concurrent representation could create a substantial risk of disclosure of confidential or proprietary information in this case that a protective order may be insufficient to protect. Defendants will meet and confer with Plaintiff's counsel should this concern materialize.

## IV.   PRIVILEGE

The Parties agree to meet and confer regarding any privilege issues that arise.  The Parties have agreed that in the event of an inadvertent disclosure, the party who unintentionally disclosed a privileged document may claw back the document at issue.

## V.   EVIDENCE PRESERVATION

The Parties represent that they have taken reasonable steps to preserve documents, electronically stored information ("ESI"), and tangible things that may be relevant to the claims and defenses in this action. At this time, the parties are not aware of any issues concerning the preservation of discoverable information requiring the Court's intervention.

## VI.   ESI

The Parties have reviewed the guidelines relating to the discovery of Electronically Stored Information and do not anticipate issues with preservation of ESI.

## VII.   FACTS

### Plaintiff's Position

This case is a wage and hourly class action (and will soon become a PAGA action involving PAGA claims) on behalf of employees who are or were CRAs who worked for Defendants. Defendants are essentially outsourcers who conduct clinical trials for drugs and medical product developers and manufacturers.  In general terms, CRAs gather data for the clinical trials of drug and medical products that are used to verify the efficacy and

3

326717740v.1

safety of these drugs and medical products before they are released to the public.  Clinical trials have very highly regulated subject matters and processes. They are characterized by and governed by very detailed written protocols that often exceed 100 or more pages of strict instructions that researchers much adhere to and very detailed standardized tools, methodologies and forms for data gathering.  Strict adherence to a standardized protocols and standardized tools, methodologies and forms for data gathering are the cornerstones of clinical trial data integrity. Strict compliance minimizes bias, ensures valid endpoints, and guarantees that collected metrics can be reliably pooled, compared, and audited across all trial sites. Maintaining strict high level of consistency clinical trials requires a very robust, structured approach across the research teams.  As a result, all staff must complete comprehensive training on the clinical trial protocols, standard operating procedures (SOPs) and data gathering tools, methodologies and forms prior to trial participation. Crucial data points must be entered systematically and consistently into case report forms according to the protocols and guidelines like the FDA's Study Data Standards. Clinical trial associates must be strictly supervised. In the event of a protocol deviation, an investigative team must report the incident immediately, following procedures outlined in the Clinical Research Documents. Independent monitoring and ethics committees must conduct routine site visits to ensure data remains complete, accurate, and verifiable. As a result, the specific duties of a clinical trial researcher are strictly proscribed and highly mechanical and involve little if any discretion or independent judgment. In simple terms, CRAs are essentially highly regulated production workers in the factory of conducting clinical trials that is the core business of Defendants. As a result, it is Plaintiff's contention that these CRAs do not meet the primary duties test for the administrative exemption under California law and are non-exempt employees that have been misclassified as exempt by Defendants. In terms of any differences between specific clinical trials and specific job duties of CRAs, Plaintiff contends that the differences are essentially irrelevant because the overall very rigid framework of strict adherence to the protocols, rules, methodologies and data gathering of clinical trials are

4

JOINT DISCOVERY PLAN

326717740v.1

so strict and so regulated that the CRAs (across different clinical trials) cannot meet the primary duties test of the California administrative exemption.

**Defendants' Position**

Plaintiff began working for IQVIA on January 4, 2022 and has held multiple CRA roles, including clinical functional service provider ("CFSP") CRA, CRA II, and Sr. CRA roles. On February 13, 2026, Plaintiff filed a putative class action on behalf of Defendants' California employees classified as exempt CRAs or equivalent CRA positions from February 13, 2022 to the present. The putative class is estimated to include approximately 320 CRAs or equivalent titles across at least eleven CRA-related roles, including traditional CRA, CFSP CRA, Sr. CRA, CFSP Sr. CRA, and Exec. CRA positions.

Defendants deny the allegations in Plaintiff's operative Complaint and Defendants will be able to establish that the putative class of CRAs were properly classified as exempt. CRAs perform highly specialized, non-manual work involving clinical trial administration, site monitoring, regulatory compliance, data integrity, participant safety, and escalation of quality issues. The putative class of CRAs have specialized, scientific and technical background and training and there is no dispute that they meet, and exceed, the minimum salary requirements.

Further, Plaintiff's class claims will fail and they will not be able to certify class. Significant variation exists among putative class members' job duties, training, assignments, billing practices, and applicable SOPs. Traditional CRAs may work across different studies, protocols, sponsors, and sites—each having a different set of protocols and requirements applicable to the study. By contrast, CFSP CRAs are generally assigned to a specific client or sponsor and may be subject to client-specific expectations, training, reporting structures, billing practices, and SOPs. Responsibilities likewise differ significantly across CRA, Sr. CRA, and Exec. CRA roles. These variations require individualized inquiries into each CRA's actual duties, discretion, supervision, assignments, SOPs, and time allocation. Accordingly, Defendants contend that

326717740v.1

individualized issues will predominate over common proof and preclude class certification.

## VIII.  LEGAL ISSUES

### Plaintiff's Position

In general, Plaintiff agrees with the legal issues set forth by Defendants below.

### Defendants' Position

Key legal issues include, but are not limited to:

1. Whether Plaintiff and the putative class were properly classified as exempt under California's administrative exemption, including Wage Order No. 4;

2. Whether Plaintiff can satisfy Rule 23's commonality, typicality, adequacy, predominance, and superiority requirements;

3. Whether individualized issues concerning putative class members' duties, assignments, discretion, supervision, training, and time allocation predominate over common issues;

4. Whether Plaintiff's claims are typical of the putative class, including CRAs and CFSP CRAs with different client assignments, protocols, and billing practices;

5. Whether Plaintiff is an adequate class representative.

## IX.  MOTIONS

### Plaintiff's Position

Plaintiff will bring a motion for certification of the classes in this action.  In the event that Defendants bring a motion for summary judgment or summary adjudication, Plaintiff may also bring cross-motions.

### Defendants' Position

Defendants may bring an affirmative Motion to Deny Class Certification under *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), as well as a Motion for Summary Judgment and/or Summary Adjudication.

## X.  INITIAL DISCLOSURES

The Parties will timely exchange initial disclosures by July 31, 2026.

JOINT DISCOVERY PLAN

326717740v.1

## XI.  SUBJECTS, TIMING, AND LIMITATIONS OR PHASES OF DISCOVERY

The Parties agree that discovery should be conducted in accordance with the parameters set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of California, except as set forth below regarding Defendants' proposed phased discovery schedule and any limits ordered by the Court. The Parties reserve the right to seek leave of Court to exceed any discovery limitations, if the need arises.

### Plaintiff's Position

This is not the first class action case that Plaintiff's lawyers have prosecuted involving clinical trials and CRAs.  As a result, Plaintiff's lawyers are very familiar with the general and specific arguments that are used by the defense bar to defend these types of cases and the discovery necessary to prosecute and defend them.

In response to Defendants' position below related to discovery, if Defendants are suggesting that there should be no merits-based discovery whatsoever in preparation for a motion for certification, Plaintiff strongly disagrees with Defendants' position.  Clearly, in response to a motion for certification, Defendants will argue that the substance of the California administrative exemption of the CRAs on the merits directly and/or at a minimum will argue merits of that exemption in connection with the commonality element of certification. For example, Defendants will almost certainly argue that differences in the details of different clinical trials, differences in job duties among the CRA population and for different clinical trials will defeat the commonality element of certification.  As a result, it will be necessary for Plaintiff to obtain discovery to oppose these contentions and show that these differences, if any, do not in fact defeat the element of commonality.  In the experience of Plaintiff's lawyers, the discovery that is necessary to do this is factually intensive.  In this regard, the following are among the subjects of discovery that Plaintiff's lawyers believe will be required:

- Clinical trial protocols will need to be produced.
- Training material will need to be produced.

JOINT DISCOVERY PLAN

326717740v.1

- Data gathering forms will need to be produced.
- Clinical trial job descriptions and job duties will need to be produced.
- Class numbers and clinical trial class member assignments to clinical trial will need to be produced.
- A Belaire West type process will need to be conducted so that class member interviews and declarations can be taken.
- Supervisor lists will need to be produced so that supervisors can be deposed.
- A list of clinical trial clients and the contracts between Defendants and these clients will need to be produced so that depositions can be taken regarding the client's requirements for strict adherences to the protocols, rules, methodologies and data gathering of the clinical trials.
- CRA timekeeping, duties tracking and payroll data will need to be produced to support the commonality and typicality elements of certification.
- Plaintiff's lawyers anticipate that it may be necessary for them to take more or less than 10 depositions (possibly 15 depositions) as part of this discovery, including multiple Defendant PMK depositions, supervisor depositions and client depositions.
- As a result of this discovery, Plaintiff's lawyers expect that there will be thousands of pages (if not more than ten thousand pages) of documents produced by Defendants pre-certification.  Because of concerns of the Defendants and their clients about confidentiality and patient privacy, the redaction of these documents will need to be carefully and sensitively conducted and time consuming.

For the reasons set forth above, Plaintiff agrees that pre-certification discovery in this case will reasonably take approximately one year.  This discovery of course could become even more cumbersome if motions to compel or motions for protective orders are filed by the parties.

**Defendants' Position**

8

JOINT DISCOVERY PLAN

326717740v.1

Defendants propose that discovery proceed in phases, as further discussed below:

**Phase 1: Pre-Certification Discovery.** Phase 1 should be limited to Plaintiff's individual claims and the threshold issues relevant to class certification, and should be completed by March 2027. Phase 1 should include Plaintiff's personnel, timekeeping, and pay records, the policies applicable to Plaintiff and the putative class, Plaintiff's deposition, and a Rule 30(b)(6) deposition of a corporate representative on appropriately limited topics.

Any pre-certification putative class discovery directed to certification should be completed no later than 30 days before the deadline for filing class certification briefing, except for deposition discovery of any declarants who submit declarations in support of or in opposition to class certification. Any pre-certification putative class discovery should also be conditioned on Plaintiff first making the required *prima facie* showing prior to engaging in putative class discovery.

**Class Certification Briefing and Phase 2: Post-Certification Discovery.** Following completion of Phase 1, the Parties should proceed with class certification briefing. If any claim is certified, discovery should proceed in Phase 2 and should be limited to the certified class claims.

**Financial Condition Discovery.** Defendants further contend that any discovery concerning Defendants' financial condition or net worth should not proceed unless and until there has been a finding that an officer, director, or managing agent acted with malice, oppression, or fraud.

**XII.   OTHER ORDERS UNDER RULE 26(C) OR UNDER RULE 16(B) AND (C)**

The Parties anticipate filing with the Court a Stipulated Protective Order.

**XIII.  RELATED CASES**

There are no related cases or proceedings.

**XIV.  SCHEDULING**

**Plaintiff's Position**

JOINT DISCOVERY PLAN

326717740v.1

Plaintiff agrees with the schedule described by Defendants below with two important caveats.

First, class certification in this case will be substantially intertwined with the merits and will be relatively fact intensive.  Accordingly, Plaintiff wishes to avoid disputes between the parties regarding what is and what is not class certification discovery.  Plaintiff will make efforts to ensure that the discovery that is requested in Phase One will be primarily oriented towards class certification issues. However, Plaintiff does not believe it would be appropriate for the Court to set an order prohibiting Plaintiff from exploring merits-based issues as part of that class certification discovery as this will invite unnecessary discovery issues that may require court intervention, protract the case artificially, and increase the litigation burden on the parties.

Second, the proposed timeline set forth by Defendant below may be enough time to move for class certification; however, Plaintiff anticipates that this will be a fact-intensive certification motion.  As indicated above, Plaintiff anticipates possibly taking ten to fifteen depositions in this case, including current and former managers, class members, and third-party depositions.  Plaintiff also anticipates there will be tens of thousands of pages of documents produced in this case, as well as a number of confidentiality disputes, as set forth in Defendant's portion of the report.  These issues will take time.  Plaintiff mentions this because Plaintiff may, upon a showing of good cause, require additional time to certify the class once discovery begins.  Plaintiff reserves the right to request a continuance at a later time and advises the Court now of these issues to be proactive.  Plaintiff will of course be diligent with respect to discovery, but this is a more complicated case in many respects than most wage and hour class actions.

**Defendants' Position**

Defendants request a phased schedule consistent with their position that discovery should first be limited to Plaintiff's individual claims and threshold class-certification issues:

JOINT DISCOVERY PLAN

326717740v.1

| Event | Proposed date |
|-------|---------------|
| Initial disclosures | July 31, 2026 |
| Phase 1 Pre-Certification Discovery Cutoff | March 26, 2027 |
| Motion for Class Certification | May 14, 2027 |
| Opposition to Class Certification | June 28, 2027 |
| Reply in support of Class Certification | July 19, 2027 |
| Post-Certification Merits Discovery, Dispositive Motions, Pretrial Deadlines, and Trial | To be set, if necessary, after resolution of Class Certification |

## XV.  TRIAL

### Plaintiff's Position

Plaintiff believes it is premature to set a trial date. Trial length will depend on whether the matter proceeds on a class or individual basis.  Plaintiff has requested and will continue to request a jury trial, excluding the PAGA and UCL claims – which will require a bench trial.

### Defendants' Position

Defendants believe it is premature to set a trial date. Trial length will depend on whether the matter proceeds on a class or individual basis. The putative class is estimated to include approximately 320 CRAs or equivalent titles, but significant variation among those employees will require individualized inquiries precluding class certification.

## XVI.  RELIEF

### Plaintiff's Position

JOINT DISCOVERY PLAN

326717740v.1

The relief sought by Plaintiff is the typical relief that Plaintiff seeks in wage and hour class and PAGA actions -- specifically, lost wages, overtime wages, meal break penalties, rest break penalties, other derivative penalties under California law, PAGA penalties, attorneys' fees and costs. Plaintiff is confident that this Court will certify classes based upon a motion for class certification.  Plaintiff is also confident that it will prevail on any motions for summary judgment or summary adjudication brought by Defendants because this case will prove to be a factually intensive case with disputed issue of fact for a jury.

### Defendants' Position

Defendants deny each and every allegation in Plaintiff's Complaint.  Plaintiff's claims are without merit and are inappropriate for class certification. Defendants will move for an order denying class certification and move for summary judgment. Defendants will seek a judgment from the Court in their favor.

## XVII. SETTLEMENT

### Plaintiff's Position

Plaintiff agrees with Defendants' position below.  Plus, Plaintiff is willing to and has agreed to engage in an early mediation of this matter (so long as there is a meaningful informal exchange of information that will allow the parties to have a meaningful mediation).  Plaintiff believes that it will take approximately six months to choose a mediator, set a mediation (which includes working with the mediator's availability, with the more popular mediators having their first availability starting in the first quarter of 2027), exchange informal information, have experts analyze the relevant data, prepare mediation briefs and conduct the mediation.

### Defendants' Position

The Parties continue to meet and confer regarding the most efficient path toward potential resolution, including but not limited to private mediation.

JOINT DISCOVERY PLAN

326717740v.1

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### Plaintiff's Position

Plaintiff has nothing to disclose.

### Defendants' Position

Defendants filed a Notice of Interested Persons or Entities on March 19, 2026 (see Dkt. 2.)

## XIX. PROFESSIONAL CONDUCT

### Plaintiff's Position

Plaintiff and his counsel have reviewed Civil Local Rule 2.1 and agree to abide by the Court's Code of Conduct.

### Defendants' Position

Defendants and their counsel have reviewed Civil Local Rule 2.1, and agree to abide by the Court's Code of Conduct.

## XX. MISCELLANEOUS

Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the Parties consent to service by electronic means.

JOINT DISCOVERY PLAN

326717740v.1

DATED: June 22, 2026

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

THE BLANCHARD LAW GROUP, APC

HOLMES LAW GROUP, APC

By: s/ Lonnie C. Blanchard III
  Todd M. Friedman
  Lonnie C. Blanchard III
  Jeff Holmes
Attorneys for Plaintiff
SHEHRYAR IQBAL

DATED: June 22, 2026

SEYFARTH SHAW LLP

By: s/ Natalie C. Kreeger
  Geoffrey C. Westbrook
  Annette L. Rose
  Natalie C. Kreeger

Attorneys for Defendants,
IQVIA INC., IQVIA RDS INC., and
IQVIA HOLDINGS INC.

14

JOINT DISCOVERY PLAN

326717740v.1